******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

McDONALD, J., with whom ECKER, J., joins, dissenting. This appeal centers on whether the zoning regulations governing a residential neighborhood designated for "single-family" homes permit the short-term occupancy of those structures by transient travelers.[1] This court has recognized that "[t]he purpose of zoning is to serve the interests of *the community as a whole* . . . ." (Emphasis added.) *Malafronte* v. *Planning & Zoning Board*, 155 Conn. 205, 212, 230 A.2d 606 (1967). Today, the majority of this court discounts both the importance of zoning regulations to the interests of the community as a whole and the plain meaning of the terms included in the applicable residential zoning regulations and holds that the short-term occupancy of a single-family home by transient travelers, which undermines the very purpose of the applicable zoning regulations, nevertheless is permitted by those regulations.

The plaintiff, Frances Wihbey, was ordered by the zoning enforcement officer (zoning officer) of the Pine Orchard Association (POA), an incorporated borough and municipal subdivision of the town of Branford, to cease and desist from engaging in the short-term rental of a single-family property the plaintiff owned in the POA. The plaintiff appealed to the defendant, the Zoning Board of Appeals of the Pine Orchard Association (board), which upheld the cease and desist order. The plaintiff then appealed from the board's decision to the trial court, which reversed that decision. The board and the intervening defendants, Michael B. Hopkins and Jacqueline C. Wolff,[2] appealed, on the granting of certifi-

---

[1] The Vrbo terms and conditions expressly refer to the party paying for use of the property as a "traveler." Vrbo, Terms and Conditions (last updated July 6, 2023), available at https://www.vrbo.com/lp/b/terms-of-service?msockid=1592f2630ba46bf63156e0c10a5a6a5e (last visited July 26, 2024).

[2] The intervening defendants are owners of real property that abuts the plaintiff's property. For convenience, I hereafter refer to the board and the intervening defendants collectively as the defendants.

cation, from the trial court's judgment to the Appellate Court, which affirmed in part and reversed in part the trial court's judgment. *Wihbey* v. *Zoning Board of Appeals*, 218 Conn. App. 356, 359, 396, 292 A.3d 21 (2023). This court granted certification to determine whether short-term occupancy of a single-family dwelling by transient travelers constitutes a permissible use of the subject property under the 1994 POA zoning regulations (1994 regulations).[3] See *Wihbey* v. *Zoning Board of Appeals*, 346 Conn. 1019, 1019–20, 292 A.3d 1254 (2023). Because I conclude that the short-term occupancy of the plaintiff's property by transient travelers was impermissible under the 1994 regulations, I would reverse in part the judgment of the Appellate Court. Accordingly, I respectfully dissent.

In 2005, the plaintiff purchased property in the POA. The property consists of a single-family home subject to the POA's zoning regulations. Since purchasing the property, the plaintiff has consistently allowed travelers to book the property on a short-term basis, typically for periods of three days to one week, on the Vrbo[4] website. Importantly, in the last ten years, these transient travelers have never stayed at the property for more than thirty days at a time.[5]

---

[3] Although the POA refers to the 1994 regulations collectively as the 1994 Pine Orchard Association Zoning Ordinance, I refer to this body of regulations as regulations in the interest of simplicity.

[4] Vrbo is a web-based platform that allows property owners to connect with potential short-term travelers. Vrbo, Terms and Conditions (last updated July 6, 2023), available at https://www.vrbo.com/lp/b/terms-of-service?msockid=1592f2630ba46bf63156e0c10a5a6a5e (last visited July 26, 2024) (stating that "[t]he [s]ite is a [v]enue and [w]e are [n]ot a [p]arty to any [r]ental [a]greement or other [t]ransaction [b]etween [u]sers of the [s]ite"). Vrbo does not provide "rental agreements," but property owners are permitted to separately enter into these agreements with renters. See Vrbo, Upload Your Rental Agreement, available at https://help.vrbo.com/articles/How-to-upload-my-rental-agreement (last visited July 26, 2024) ("[r]ental agreements are optional documents you can add to your listing to expand on your house rules and set expectations with guests").

[5] A period of less than thirty days is widely considered transient and insufficient to establish an individual's dwelling. See, e.g., General Statutes

Relevant to this appeal, the 1994 regulations state that the purpose of the regulations is to "provid[e] a comprehensive plan which will promote the health, safety, and general welfare of the community" and that the regulations "shall be made with reasonable consideration as to the character of the community . . . ." Pine Orchard Assn. Zoning Regs., § I (1994). Section IV (4.1) of the 1994 regulations, which lists the permitted uses of properties, provides one permitted use to be as "[a] single-family dwelling"; id., § IV (4.1); which is defined in § XIII as "[a] building designed for and occupied exclusively as a home or residence for not more than one family." Id., § XIII. Section XIII of the 1994 regulations further defines "family" as "[o]ne or more persons related by blood, marriage or adoption, and in addition, any domestic servants or gratuitous guests. A roomer, boarder or lodger, shall not be considered a member of a family."[6] Id. The 1994 regulations do not expressly permit the renting of single-family homes but do provide that "[a] sign not more than five square feet in area when placed in connection with the sale, *rental,* construction or improvement of the premises and for no other purpose" is permitted. (Emphasis added.) Id., § IV (4.4).

In 2018, the POA adopted recommended amendments to its 1994 regulations, which included a specific provision

§ 47a-2 (c) (1) ("[o]ccupancy in a hotel, motel or similar lodging for less than thirty days is transient"); Americans with Disabilities Act Accessibility Guidelines, 28 C.F.R. pt. 36, app. A (2023) (local laws and common real estate practices "treat stays of [thirty] days or less as transient rather than residential use").

[6] It is not clear that the property was always rented to a family within the meaning of the 1994 regulations. The record reflects that the property was sometimes used to accommodate groups of "thirty or forty people going late into the night . . . ." It is probable that some of the plaintiff's uses were not permitted under the regulations, but it is also likely that, on at least one occasion, he did rent to a "family" for purposes of the regulations. Nonetheless, I recognize that the issue has been remanded to the trial court for factual findings.

prohibiting the short-term rental of properties subject to the regulations. Specifically, § 4 (4.1) of the 2018 zoning regulations (2018 regulations) states that "[a] single-family dwelling may not be used or offered for use as a [s]hort-[t]erm [r]ental [p]roperty." Pine Orchard Assn. Zoning Regs., § 4 (4.1) (2018). The 2018 regulations define "short-term rental property" as "[a] residential dwelling unit that is used and/or advertised for rent for occupancy by guests for consideration for a period of less than thirty . . . continuous days." Id., § 16.

In 2019, the POA, acting through its zoning officer, issued a cease and desist order to the plaintiff for violations of the short-term rental ordinance and stated that the plaintiff's use of his property violated § 13 (13.3.2) of the 2018 regulations prohibiting short-term rentals. The plaintiff appealed from this order to the board, and, after public hearings on the matter, the appeal was denied. The plaintiff then appealed to the trial court, which concluded that, because the plaintiff's use of the property was permitted under the 1994 regulations, the plaintiff could not be prohibited from using his property for short-term rentals under the 2018 regulations. Accordingly, the trial court reversed the board's decision. The defendants thereafter appealed, and the Appellate Court affirmed in part the trial court's judgment, concluding that the short-term rental of a single-family dwelling was permissible under the 1994 regulations. *Wihbey* v. *Zoning Board of Appeals*, supra, 218 Conn. App. 359, 391–92, 396. The Appellate Court, however, also reversed in part the trial court's judgment, concluding that the trial court incorrectly determined that the plaintiff had established a preexisting, nonconforming use of the property.[7] Id., 359, 392–96. This certified appeal followed.

---

[7] Whether the Appellate Court correctly concluded that the trial court incorrectly determined that the plaintiff had established a preexisting, nonconforming use of the property is not before this court.

On appeal, the defendants argue that the Appellate Court erred in concluding that short-term rentals of a single-family dwelling constitute a permissible use under the 1994 regulations. In support of this contention, the defendants point to the language of the 1994 regulations that provides that the only relevant permissible use of the property was as "[a] single-family dwelling"; Pine Orchard Assn. Zoning Regs., § IV (4.1) (1994); which is defined as a property "occupied exclusively as a home or residence for not more than one family." Id., § XIII. The defendants contend that the Appellate Court's interpretation of the word "residence" in the 1994 regulations was incorrect because "residence" cannot refer to temporary stays of only a few days to one week. For his part, the plaintiff argues that the Appellate Court correctly concluded that short-term rentals of a single-family dwelling are permitted under the 1994 regulations. Because I agree with the defendants' interpretation of "residence," I conclude that the majority's interpretation of the applicable zoning regulations is flawed. Despite clear support to the contrary, the majority concludes that the "definition of 'single-family dwelling' in the 1994 regulations does not clearly and unambiguously mean that only long-term rentals of such dwellings are permitted but reasonably can be interpreted to mean that only structures designed and used as houses or dwellings for occupation by a single family at a given time are permitted."

The interpretation of the applicable zoning regulations presents a question of law over which this court's review is plenary. See, e.g., *Heim* v. *Zoning Board of Appeals*, 289 Conn. 709, 715, 960 A.2d 1018 (2008). "[Z]oning regulations are local legislative enactments . . . and, therefore, their interpretation is governed by the same principles that apply to the construction of statutes." (Citation omitted; internal quotation marks omitted.) *Enfield* v. *Enfield Shade Tobacco*, *LLC*, 265

Conn. 376, 380, 828 A.2d 596 (2003). Our interpretation of the 1994 regulations is therefore guided by the principles set forth in General Statutes § 1-2z. I am mindful that, "[b]ecause zoning regulations are in derogation of common-law property rights, they must be strictly construed and not extended by implication. . . . Whenever possible, the language of zoning regulations will be construed so that no clause is deemed superfluous, void or insignificant. . . . The regulations must be interpreted so as to reconcile their provisions and make them operative so far as possible. . . . When more than one construction is possible, [this court] adopt[s] the one that renders the enactment effective and workable and reject[s] any that might lead to unreasonable or bizarre results." (Internal quotation marks omitted.) *Kraiza* v. *Planning & Zoning Commission*, 304 Conn. 447, 453–54, 41 A.3d 258 (2012).

The parties agree that the 1994 regulations are the governing regulations in this case. The parties also agree that the 1994 regulations are permissive, and, thus, "[a]ny use that is not permitted is automatically excluded." (Internal quotation marks omitted.) *Heim* v. *Zoning Board of Appeals*, supra, 289 Conn. 716 n.8. I begin with the text of the 1994 regulations. See General Statutes § 1-2z. The 1994 regulations provide that no building or land shall be used for anything other than eight specified uses, including, as relevant to this case, "[a] single-family dwelling." Pine Orchard Assn. Zoning Regs., § IV (4.1) (1994). That term is defined as "[a] building designed for and occupied exclusively as a home or residence for not more than one family." Id., § XIII. A "family," in turn, is defined as "[o]ne or more persons related by blood, marriage or adoption, and in addition, any domestic servants or gratuitous guests. A roomer, boarder or lodger, shall not be considered a member of a family." Id.

Whether the short-term use of the plaintiff's property by transient travelers is permitted by the 1994 regulations turns on the meaning of the terms "home" and "residence." These terms are not defined in the regulations. It is well settled that, "[i]f a . . . regulation does not sufficiently define a term, it is appropriate to look to the common understanding of the term as expressed in a dictionary." (Internal quotation marks omitted.) *Heim* v. *Zoning Board of Appeals*, supra, 289 Conn. 717. "Home" is consistently defined as a place that is fixed. See, e.g., Ballentine's Law Dictionary (3d Ed. 1969) pp. 563–64 (Describing "home" as "[a] word so suggestive of love, affection, and security as to be one of the most pleasantly sounding words in the English language. A place where a [couple] may live in the enjoyment of each other's society and rear their offspring. . . . The place where a family lives in the close relation of people who enjoy the company of each other and the comfort and security of abiding together . . . ." (Citations omitted.)); 7 Oxford English Dictionary (2d Ed. 1998) p. 322 (defining "home" as "[a dwelling place], house, abode; the *fixed* residence of a family or household; the *seat* of domestic life and interests; one's own house; the dwelling in which one *habitually lives*, or which one regards as one's proper abode" (emphasis added)); The American Heritage College Dictionary (4th Ed. 2007) p. 662 (Defining "home" as "[a] place where one lives; a residence. . . . A dwelling place together with the social unit that occupies it; a household.").

The definitions of "residence" similarly connote a degree of permanency that does not apply to the nature of transient, short-term occupancy. See, e.g., Black's Law Dictionary (2d Ed. 1910) p. 1026 (Defining "residence" as "[l]iving or dwelling in a certain place permanently or for a considerable length of time. The place where a man makes his home, or where he dwells permanently or for an extended period of time."); 13 Oxford

English Dictionary, supra, p. 707 (defining "residence" as "hav[ing] one's usual [dwelling place] or abode; to reside . . . to take up one's residence, to establish oneself; to settle," and "[t]he circumstance . . . of having one's permanent or usual abode in or at a certain place" (emphasis omitted)); The American Heritage College Dictionary, supra, p. 1183 (defining "residence" as "[t]he place in which one lives; a dwelling").

These dictionary definitions lead me to conclude that the plain meanings of both "home" and "residence" imply a degree of permanence and connection to community that could hardly be used, accurately or with a measure of precision, to refer to a short-term occupancy by a transient traveler for a few days.[8] At the same time, "[i]t is a fundamental tenet of statutory construction that [t]he use of . . . different terms . . . within the same statute suggests that the legislature acted with complete awareness of their different meanings . . . and that it intended the terms to have different meanings . . . ." (Internal quotation marks omitted.) *Celentano* v. *Oaks Condominium Assn.*, 265 Conn. 579, 609, 830 A.2d 164 (2003); see also, e.g., *Enfield* v. *Enfield*

---

[8] The Appellate Court agreed that the term "home" signals a level of permanence. See *Wihbey* v. *Zoning Board of Appeals*, supra, 218 Conn. App. 376 ("the essence of the definitions of 'home' indicate that a home is a 'domicile,' i.e., 'a person's fixed, permanent, and principal home for legal purposes' "). However, despite the overwhelming support for the plain meaning of "residence" to require a degree of permanence, the Appellate Court concluded that "it can also mean a place where someone lives for some period of time without the same sense of permanence associated with a home." Id. The Appellate Court found support for this conclusion in the word "or" separating "home" and "residence . . . ." (Internal quotation marks omitted.) Id. The Appellate Court correctly concluded that the use of this conjunction suggests that the drafters of the regulations intended to attach different meanings to the two terms. See id. The Appellate Court then concluded that, because "home" necessarily implies some sense of permanence, to interpret "residence" as also referring to a dwelling with a sense of permanence, as opposed to "a place of temporary sojourn," would render the term duplicative of "home" and, thus, "essentially meaningless." (Internal quotation marks omitted.) Id.

*Shade Tobacco*, *LLC*, supra, 265 Conn. 380 (interpretation of zoning regulations is governed by same principles that apply to construction of statutes). However, simply because the terms "home" and "residence" necessarily have different meanings within the 1994 regulations does not mean that the terms must lie on totally different ends of the spectrum regarding their respective meanings related to housing. It is entirely possible, and indeed the only appropriate interpretation in my view, that the two terms, when read in the context of the regulations, were intended to encompass two types of acceptable uses of the property that imply some degree of permanence. For example, a "residence" could refer to a Vermont vacation property used by the property owners and their family on winter weekends to ski or to celebrate certain holidays. Similarly, it is not at all uncommon in Connecticut for a family to have its "home" in Florida for six months and one day for tax purposes but simultaneously maintain a "residence" in Connecticut where the family spends five months and twenty-nine days in the spring and summer months. See, e.g., *9 Pettipaug, LLC* v. *Planning & Zoning Commission*, 349 Conn. 268, 273, 316 A.3d 318 (2024) (borough of Fenwick has fourteen year-round households and "an additional sixty-seven homes that serve as summer residences"). Often these second "residences" are summer retreats along the coastline, handed down from generation to generation, speaking to their permanence for the family's benefit. Such a use is very different from the transient nature of a short-term traveler, who may use a property once for a few days and never return again. It is hard to imagine a person claiming with a straight face that he or she made a reservation at a local hotel when visiting a family member for a weekend and properly characterizing it as his or her "residence" for the thirty-six hours that the person was in town. A seasonal vacation property, on the other hand, is still

utilized with a sense of permanence, as the owner typically has an intention to come and go over time, and, usually, it would bear the hallmarks of permanence, appointed with the owner's furnishings and closets filled with his or her clothes.[9] Thus, although a vacation property may not be an individual's "home," it may well be characterized as a "residence." The majority claims that "the defendants' interpretation would lead to the anomalous result that, if the plaintiff occupied the property only on alternate weekends, leaving it vacant the rest of the time, the use would be illegal because the plaintiff would not be occupying the property 'with a degree of permanency . . . .' " This claim ignores the spectrum of possibilities that comes with property ownership and erroneously equates the use of one's vacation property throughout the year with that of inconsistent and detached short-term renters. I do not see the 1994 regulations in such binary terms.

The majority concludes that *both* "residence" and "home" can refer to transient uses of property. See text accompanying footnote 9 of the majority opinion ("Under these definitions, the language of the 1994 regulations permitting a 'single-family dwelling' defined as '[a] building designed for and occupied exclusively as a home or residence for not more than one family' . . . would mean that the primary structure on the property must be designed and used as a house or dwelling for occupation by only one family at a given time. . . . This definition focuses not on the length of time that a particular family occupies the structure but on the nature and use of the structure at any given time." (Citation omitted; footnote omitted.)); see also footnote

[9] This is not to suggest that a person's second "residence" is always a vacation or seasonal home. In today's economy, it is not unusual for individuals to work for a company based in Connecticut while, for example, maintaining a home in Atlanta, Chicago or Dallas, and occupying another residence near the company's headquarters in Connecticut, where they live for part of the week and fly home to their family on weekends.

9 of the majority opinion ("[i]n our view, both the terms 'home' and 'residence' reasonably can be interpreted to refer to a structure that is used as a dwelling"). This interpretation of the word "home" extends far beyond the common meaning and finds no support in the regulations at issue here. Indeed, an interpretation of both "home" and "residence" that implies a sense of permanency is in keeping with the purpose of the 1994 regulations when read in their entirety. See General Statutes § 1-2z (plain meaning of statute is ascertained from text itself and its relationship to other statutes). At the outset, the 1994 regulations provide that they are "made for the purpose of providing a comprehensive plan which will promote the health, safety, and general welfare of the community . . . ." Pine Orchard Assn. Zoning Regs., § I (1994). The interpretation advanced by the majority fails to consider, much less promote, the "general welfare of the community . . . ." Id. At a hearing conducted before the board, residents described the plaintiff's property as a "Motel 6," a "revolving weekend party house," an "absolute horror," a "frat [house]," "very destructive," and "very loud . . . ." One resident spoke about the numerous emails and texts he sent to the plaintiff to complain about the trespassing that had occurred on his property and stated his intention to sell his own property if the activities on the plaintiff's property continued. Another resident urged the board to consider the "negative impact that [the plaintiff's short-term rentals have] on our neighborhood and our residential communities' character . . . ."

Other courts, when faced with the question of whether short-term occupancies by transient travelers are permitted by the applicable zoning regulations, have looked at the impact that such rentals have had on the community as a whole. See, e.g., *Ewing* v. *Carmel-By-The-Sea*, 234 Cal. App. 3d 1579, 1591, 286 Cal. Rptr. 382 (1991) (finding that short-term rentals of homes in

single-family residential zoning districts "undoubtedly affect the essential character of a neighborhood and the stability of a community"), review denied, California Supreme Court, Docket No. S023822 (January 8, 1992), cert. denied, 504 U.S. 914, 112 S. Ct. 1950, 118 L. Ed. 2d 554 (1992). Short-term occupancies of single-family homes by transient travelers directly upend the purpose of the 1994 regulations because they do not serve the "general welfare of the community . . . ." Pine Orchard Assn. Zoning Regs., § I (1994). This is because "[s]hort-term tenants have little interest in public agencies or in the welfare of the citizenry. They do not participate in local government, coach [L]ittle [L]eague, or join the hospital guild. They do not lead a scout troop, volunteer at the library, or keep an eye on an elderly neighbor. Literally, they are here today and gone tomorrow—without engaging in the sort of activities that weld and strengthen a community." *Ewing* v. *Carmel-By-The-Sea*, supra, 1591. Interpreting the 1994 regulations as prohibiting short-term occupancies, on the other hand, directly serves the general welfare of the community and, therefore, is in keeping with both the common dictionary definitions of the terms "home" and "residence" and the express purpose of the 1994 regulations. "The permanence and stability of people living in single-family residential zoning districts [create] a sense of community, [cultivate] and [foster] relationships, and [provide] an overall quality of a place where people are invested and engaged in their neighborhood and care about each other." *Slice of Life, LLC* v. *Hamilton Township Zoning Hearing Board*, 652 Pa. 224, 246, 207 A.3d 886 (2019).

Furthermore, the 1994 regulations specifically exclude "roomer[s], boarder[s] or lodger[s]" from the definition of "family" and, therefore, from being appropriate users of the single-family homes in the district. Pine Orchard Assn. Zoning Regs., § XIII (1994). The parties agree that,

in this case, the travelers do not qualify as "roomer[s], boarder[s] or lodger[s] . . . ." Id. "The ordinary meaning of all three terms is someone who pays to live either in a [single] room of another's property or with a family in that property and who may receive regular meals while staying with the family. See [Merriam-Webster's Collegiate Dictionary (11th Ed. 2003)] p. 1082 (defining 'roomer' as 'one who occupies a rented room in another's house'); id., p. 137 ('boarder' is 'one that boards; [especially]: one that is provided with regular meals or regular meals and lodging'); id., p. 731 ('lodger' is defined as 'roomer'); [Black's Law Dictionary (11th Ed. 2019)] p. 214 (defining 'boarder' as '[s]omeone who lives in another's house and receives food and lodging in return either for regular payments or for services provided'); [Black's Law Dictionary (11th Ed. 2019)] p. 1128 ('lodger' is '[s]omeone who rents and occupies a room in another's house'). If a family rents the entire property from a landowner and is not living with the landowner, the family members are, by definition, not roomers, boarders or lodgers." *Wihbey* v. *Zoning Board of Appeals*, supra, 218 Conn. App. 390. This specific exclusion, however, provides additional support for the conclusion that the 1994 regulations did not intend to allow for short-term, transient uses of the properties subject to the regulations. There would be no purpose in excluding the short-term use of one *room* in a home but allowing for the short-term use of the home itself. A more sensible reading of the 1994 regulations, then, is that they prohibit both types of transient uses in favor of uses that have a degree of permanence and stability that is in keeping with the whole community or district.

When the terms "home" and "residence" are read in the context of the POA's entire zoning regulatory scheme, it is clear that, as used in the 1994 regulations, both terms unambiguously mandate that the property be used with some degree of permanence. Such a con-

clusion does not render either word meaningless because, as I explained, those words lie at different points on the spectrum of permissible uses. This interpretation is in keeping with the common understanding of the terms "home" and "residence" and, importantly, with the overall purpose of the zoning regulations. I would therefore reverse in part the Appellate Court's judgment and hold that the 1994 regulations do not permit short-term transient uses of single-family dwellings.

Accordingly, I respectfully dissent.